# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| JAMES ELLIOT, individually and as a representative of the Estate of Christine Elliot § § § § § § § | |
| | CIVIL ACTION NO. 3:20-CV-3185-S |
| v. | |
| CARE INN OF EDNA LLC, et al. | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiff's Motion to Remand ("Motion to Remand") [ECF No. 12]. For the following reasons, the Court **GRANTS** Plaintiff's Motion to Remand.

### I. BACKGROUND

This case concerns the death of Christine Elliot, who died after contracting COVID-19 while residing in a rehabilitation care facility. *See* Pl.'s Original Pet. and Req. for Disclosure ("Original Petition") [ECF No. 1] Ex. 2 at ¶¶ 30-31. At the time of her death, Mrs. Elliot was under the care of Defendants Care Inn of Edna LLC d/b/a Edgewood Rehabilitation & Care Center and THI of Texas LLC (together, "Edgewood"), receiving rehabilitative care for a pressure ulcer she had developed while under the care of Town East Healthcare Inc., Keystone Care LLC, and Ensign Services Inc. (together, "Willowbend"). *Id.* ¶¶ 13, 21, 23, 30-31. Plaintiff James Elliot, individually and as a representative of the Estate of Christine Elliot, ("Plaintiff") filed suit in the 298th District Court, Dallas County, Texas, asserting claims for medical negligence, corporate negligence, and gross negligence against both Edgewood and Willowbend. *See id.* ¶¶ 33-70.

Defendant Care Inn of Edna LLC ("Care Inn") filed a Notice of Removal [ECF No. 1], asserting three independent grounds for removal. *See* Notice of Removal; Defendant's Opposition to Plaintiff's Motion to Remand ("Opp.") [ECF No. 19]. Willowbend consented to removal, noting it "agrees with the notice of removal." *See* ECF No. 5 at 1.

First, Defendants assert that this case is removable under 28 U.S.C. § 1441(a) because it "arises under" federal law within the meaning of 28 U.S.C. § 1331. Notice of Removal ¶¶ 11-23. Specifically, Defendants argue that Plaintiff's claims are "completely preempted" by the Public Readiness and Emergency Preparedness ("PREP") Act, 42 U.S.C. § 247d-6d, even though the Original Petition asserts only state law claims. *Id.* ¶¶ 18-23.

Second, Defendants contend this case is removable under 28 U.S.C. § 1442(a)(1) because Defendants are federal officers or the equivalent. *Id.* ¶¶ 24-39. Defendants claim Care Inn "was acting hand-in-hand with, and at the specific instruction and oversight of the federal government—specifically the Department of Health and Human Services, the Centers for Medicare and Medicaid Services, and the Centers for Disease Control—in responding to the federal government's interventions, efforts, and mandates, to address the on-going national state of emergency and achieve a task that furthered the federal government's end-goal in response to the [COVID-19] pandemic." *Id.* at ¶ 35. This, according to Defendants, meant they were "acting specifically at the direction and under the supervision of the United State[s] government with respect to various countermeasures implemented to prevent and treat the COVID-19 virus." *Id.*

Third, Defendants argue that federal question jurisdiction lies over this case because, although Plaintiff asserts state law claims, they "implicate significant federal issues" under the *Grable* doctrine. Opp. ¶¶ 10-20; *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Specifically, Defendants argue that the question of whether the PREP Act preempts Plaintiff's state law claims and/or provides Defendants immunity in this case is a substantial issue of federal law that should be decided by a federal court. Opp. ¶¶ 13-16.

Plaintiff timely moved to remand. *See* Motion to Remand [ECF No. 12].

2

## II.     THE "PREP" ACT

The PREP Act authorizes the Secretary of the Department of Health and Human Services (the "Secretary") to issue a declaration providing immunity for all claims for loss directly caused by the administration or use of "covered countermeasures." 42 U.S.C. § 247d-6d(a)(1). In March 2020, the Secretary issued a PREP Act declaration regarding the COVID-19 pandemic. 85 Fed. Reg. 15, 198 (Mar. 17, 2020) (the "March 2020 Declaration"). The March 2020 Declaration designates as a "covered countermeasure" "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . ." *Id.* at 202. The March 2020 Declaration also provides that "administration" of covered countermeasures "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." *Id.*

The Secretary's declaration has been amended several times as the response to the COVID-19 pandemic evolved. In December 2020, for example, the Secretary amended the declaration "to make explicit that there can be situations where not administering a covered countermeasure to a particular individual can fall within the PREP Act" and the liability protections it affords. 85 Fed. Reg. 79, 194 (Dec. 3, 2020) (the "December 2020 Amendment"). Accordingly, "[w]here there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute 'relating to . . . the administration to . . . an individual' under [the PREP Act]." *Id.* at 197. In other words, "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act" and its liability protections. *Id.*

3

When the PREP Act applies, it provides broad immunity "from suit and liability under Federal and State law." 42 U.S.C. § 247d-6d(a)(1). Claims for covered injuries "directly caused by the administration or use of a covered countermeasure" must be pursued through a "Covered Countermeasure Process Fund" (the "Process Fund"). *Id.* § 247d-6e. Suits alleging willful misconduct may only be brought in the United States District Court for the District of Columbia after exhausting administrative remedies. *Id.* § 247d-6d(e).

### III.     LEGAL STANDARD

Any civil action brought in a state court over which the federal courts have subject matter jurisdiction may be removed to the district court embracing the place where such action is pending. 28 U.S.C. § 1441(a). Federal courts are courts of limited jurisdiction, possessing only power authorized by the Constitution or statute. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). A federal court must presume that a cause of action lies outside its limited jurisdiction, and the party asserting jurisdiction bears the burden of establishing the contrary. *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 258-59 (5th Cir. 2014) (citation omitted); *see also Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014) (the removing party has the burden to show "that federal jurisdiction exists and that removal was proper"). Because removal raises significant federalism concerns, removal is strictly construed and any doubt about the propriety of removal jurisdiction is resolved in favor of remand. *See Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007) (citations omitted); *see also Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) ("Any ambiguities are construed against removal and in favor of remand to state court.").

The two principal bases upon which a district court may exercise removal jurisdiction are: (1) the existence of a federal question, *see* 28 U.S.C. § 1331; and (2) complete diversity of citizenship among the parties, *see* 28 U.S.C. § 1332. Removal based on federal question

jurisdiction is reviewed under the well-pleaded complaint rule. *Elam v. Kan. City S. Ry.*, 635 F.3d 796, 803 (5th Cir. 2011). The "well-pleaded complaint rule" provides that federal jurisdiction exists "only if a federal question appears on the face of the plaintiff's well-pleaded complaint." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008). Thus, as "master of the complaint the plaintiff may choose to have the cause heard in state court by eschewing claims based on federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 399 (1987) (citations and internal quotations omitted).

## IV.     ANALYSIS

### A.     *Complete Preemption*

"[C]omplete preemption is an exception to the well-pleaded complaint rule." *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 685 (5th Cir. 2001) (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 244 (5th Cir. 2000)). The "complete preemption doctrine" provides that the preemptive force of a federal statute can be "so extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar*, 482 U.S. at 393. "If a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Id.* (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 24 (1983)); see also *Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). Thus, "[i]f a federal law is found to completely preempt a field of state law, the state-law claims in the plaintiff's complaint will be recharacterized as stating a federal cause of action." *Rio Grande*, 276 F.3d at 685 (quoting *Hart*, 199 F.3d at 244).

To establish complete preemption in the Fifth Circuit, "the defendant must show that: (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal

5

courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable." *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008) (quoting *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000)).

The Supreme Court has recognized only three statutory provisions as having such extraordinary preemptive force: "(1) Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185; (2) Section 502(a) of the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a); and (3) Sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85-86." *Schuster v. Percheron Healthcare Inc.*, 493 F. Supp. 3d 533, 536 (N.D. Tex. 2021) (citing *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005)). "As a general matter, complete preemption is less common and more extraordinary than defensive or ordinary preemption." *Elam*, 635 F.3d at 803.

The PREP Act does not completely preempt state law negligence claims for COVID-19-related injuries, as it fails to satisfy all three prongs of the Fifth Circuit's test for complete preemption. As such, Plaintiff's negligence claims asserted in state court are not completely preempted by the PREP Act, and removal on that basis was improper.

Defendants cannot point to any civil enforcement provision within the PREP Act that "creates a cause of action that both replaces and protects the analogous area of state law." *Johnson*, 214 F.3d at 632. The PREP Act is, at its core, an immunity statute. It does not create a federal cause of action or any rights, duties, or obligations. Rather, it provides immunity for injuries "caused by, arising out of, relating to, or resulting from the administration of a covered countermeasure to an individual. . . ." 42 U.S.C. § 247d-6d(a). Accordingly, Defendants cannot satisfy the first element of the three-part complete preemption test and have failed to establish that this case is removable on the basis that the PREP Act completely preempts Plaintiff's claims.

Nor does the PREP Act provide "a specific jurisdictional grant to the federal courts for enforcement of [any] right." *Gutierrez*, 543 F.3d at 252. The civil enforcement provision in the PREP Act does not provide that *all* claims resulting from or relating to the COVID-19 pandemic must be brought exclusively to a federal court or to the Process Fund; only claims caused by the administration or use of a "covered countermeasure." The PREP Act confers jurisdiction over these claims not to the federal courts but to the Secretary, who has the sole authority to administer the Process Fund. *See* 42 U.S.C. §§ 247d-6e(a), 247d-6e(b). Even for claims alleging "willful misconduct," which may be brought exclusively in the United States District Court for the District of Columbia, the plaintiff must first exhaust administrative remedies, and may elect to accept compensation from the Process Fund instead of filing suit in federal court. 42 U.S.C. §§ 247d-6e(d)(1), 247d-6e(d)(5); *see also* 42 U.S.C. §§ 247d-6d(d)(1), 247d-6d(e)(1). Thus, except for one narrow exception, PREP Act claims cannot be brought in federal court. Defendants therefore cannot satisfy the second element of the three-part complete preemption test.

Finally, there is little evidence that "Congress intended the federal cause of action to be exclusive." *Bernhard*, 523 F.3d at 553. As explained above, the PREP Act does not create a federal cause of action, nor does it provide that all claims resulting from or relating to the COVID-19 pandemic are to be brought exclusively to a federal court or to the Process Fund. Instead, the PREP Act provides for immunity against certain claims, the applicability of which can be readily be assessed by state courts according to the facts of a particular case.

Defendants point to a January 8, 2021 Advisory Opinion the Health and Human Services' Office of the General Counsel, which opines that the PREP Act "is a 'complete preemption' statute" because it establishes "a federal cause of action, administrative or judicial, as the only viable claim." Advisory Opinion 21-01 (the "Advisory Opinion") [ECF No. 17] Ex. E at 2.

The Advisory Opinion does not change the analysis above. It explicitly acknowledges that it "does not have the force or effect of law." Advisory Opinion 5. The Advisory Opinion was not formally "promulgated in the exercise of [the Secretary or HHS's Office of the General Counsel's] authority;" therefore it is not entitled to *Chevron* deference. *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("[A]n interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking . . . lack[s] the force of law [and] do[es] not warrant *Chevron*-style deference."); *see also United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) (no *Chevron* deference due where an agency's rule or opinion was not "promulgated in the exercise of" an agency's delegated congressional authority); *see generally Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) (affording deference to reasonable agency interpretation of ambiguous statutory provisions).

Moreover, the Administrative Opinion's interpretation lacks the "power to persuade." *Christensen*, 529 U.S. at 587 ("interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the 'power to persuade.'"). The Advisory Opinion cites no cases for its proposition that an exclusive federal administrative remedy is sufficient for complete preemption. *See* Advisory Opinion at 2.

The Court notes that it is not alone in its determination that the PREP Act does not completely preempt state law and joins the large and growing number of district courts in Texas and across the country that have held likewise.[1]

---

[1] *See, e.g., Schuster*, 493 F. Supp. 3d at 536-38; *Brannon v. J. Ori, LLC*, 2:21-CV-00058-JRG-RSP, 2021 WL 2339196, at *2 (E.D. Tex. June 8, 2021); *Gibbs on behalf of Estate of Velasquez v. Se. SNF LLC*, SA-20-CV-01333-JKP-RBF, 2021 WL 1186626, at *3 (W.D. Tex. Mar. 30, 2021); *Dupervil v. All. Health Operations, LLC*, No. 20-cv-4042-PKC-PK, 2021 WL 355137, at *12 (E.D. N.Y. Feb. 2, 2021); *Anson v. HCP Prairie Vill. KS OpCo LLC*, No. 20-CV-2346 (DDC)

## B. *Federal Officer Removal*

Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), "[f]ederal officers may remove cases to federal court that ordinary federal question removal would not reach." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020). To remove a state action to federal court under § 1442(a)(1), "a defendant must show (1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is [related to a federal directive]." *Id.* at 296; *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, (*St. Charles II*), 990 F.3d 447, 452 (5th Cir. 2021) (citing *Latiolais*, 951 F.3d at 291, 296).

Even "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007). Rather, a "special relationship" must exist between the federal and private entities. *Id.* at 157. "This relationship typically involves subjection, guidance, or control, [and] must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, (*St. Charles I*), 935 F.3d 352, 356 (5th Cir. 2019) (citations and internal quotations omitted). "A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official,' even if the regulation is highly detailed and the private firm's activities are highly supervised and monitored." *Watson*, 551 U.S. at 153.

---

(JPO), 2021 WL 308156, at *9-11 (D. Kan. Jan. 29, 2021); *Estate of Smith ex rel. Smith v. The Bristol at Tampa Bay Rehab. & Nursing Ctr.*, No. 20-CV-2798 (T), 2021 WL 100376, at *1-2 (M.D. Fla. Jan. 12, 2021); *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20-CV-1198, 2020 WL 6140474, at *7-8 (W.D. Pa. Oct. 16, 2020); *Saldana v. Glenhaven Healthcare LLC*, No. 20-CV-5631 (FMO) (MAA), 2020 WL 6713995, at *2 (C.D. Cal. Oct. 14, 2020); *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d. 518, 528-33 (D.N.J. 2020).

Defendants fail to establish that their alleged conduct was "pursuant to a federal officer's directions." *Latiolais*, 951 F.3d at 296. Defendants' assertions they were "acting hand-in-hand with, and at the specific instruction and oversight of the federal government . . . in responding to the federal government's interventions, efforts, and mandates, to address the on-going national state of emergency," Notice of Removal ¶ 35, do not demonstrate a "special relationship" with the federal government or show that Defendants were anything more than a "highly regulated" entity. *Watson*, 551 U.S. at 153; *St. Charles II*, 990 F.3d at 452. Accordingly, removal under 28 U.S.C. § 1442 was improper.

### C. *The* Grable *Doctrine*

To establish federal question jurisdiction under the *Grable* Doctrine, a state law claim must raise a federal issue that is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. at 314). "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum," *Grable*, 545 U.S. at 313. A federal issue is more likely to qualify as substantial if the case presents a nearly pure issue of law, the resolution of which "would be controlling in numerous other cases," as opposed to a fact-bound issue; the federal government itself (rather than the individual parties) has an important interest in the issue; or the determination of the issue will be dispositive of the entire case. *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006).

Defendants argue that two questions concerning the PREP Act are "necessarily raised" and "actually disputed" in this case: first, whether the PREP Act preempts Plaintiff's state court claims; and second, whether the PREP Act provides immunity to Defendants.

Neither of these questions are "necessarily raised" in this case. With respect to the first question, it is well established that the PREP Act does not completely preempt state law claims. *See* Section IV(A), *supra*. As to the second question, "a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998) (quoting *Franchise Tax Bd.*, 463 U.S. at 14). Because PREP Act immunity is a defense, it is not necessarily raised as an element of Plaintiff's claims.

Furthermore, the meaning of the PREP Act is not "actually disputed" in this case. Plaintiff's Original Petition brings only state law claims, which do not require interpretation of the PREP Act. In short, there is no "necessity for a construction of the [PREP Act] in order to make a disposition of the case." *Mays v. Kirk*, 414 F.2d 131, 134 (5th Cir. 1969). The PREP Act can only be raised as a defense, and its applicability will depend on whether the facts alleged demonstrate that an injury was caused by the administration or use of a "covered countermeasure." Federal question jurisdiction under the *Grable* Doctrine is not appropriate when a case presents a "fact-bound and situation specific" issue, as opposed to a "pure issue of law." *Empire*, 547 U.S. at 701; *accord Gunn*, 568 U.S. at 263.

Finally, the PREP Act issue is not "substantial" within the meaning of the *Grable* doctrine. Even if the anticipated assertion of the PREP Act as a defense infuses Plaintiff's state law claims with a federal issue, the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction," *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986); *see also Gunn*, 568 U.S. at 259 (resolution of a federal patent question was not substantial because its resolution was significant only to the parties in the immediate suit and not to the federal system writ large). As noted above, the disposition of a claim for which PREP

Act immunity is asserted will turn on the facts alleged. Thus, determination in one case will not necessarily bear on other cases.

Defendants point to the December 2020 Amendment to bolster their argument that removal is proper under the *Grable* Doctrine. *See* Opp. ¶¶ 18. The December 2020 Amendment asserts "there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of [*Grable*] in having a uniform interpretation of the PREP Act." 85 Fed. Reg. at 79, 197. But this interpretation of what constitutes a "substantial" federal issue misconstrues *Grable*. The plaintiff in *Grable* "premised its superior title claim [*i.e.*, its well-pleaded state law claim] on a failure by the IRS to give it adequate notice, *as defined by federal law*." *Grable*, 545 U.S. at 314-15. The *Grable* Court therefore concluded that "[w]hether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim[.]" *Id.* at 315. By contrast, the PREP Act would only afford immunity if it applies in this case. An interpretation of the PREP Act is not an essential element of any of Plaintiff's claims, and the question of whether immunity applies in a given case can readily be decided by a state court judge. Accordingly, removal under 28 U.S.C. § 1442 was improper.

## V.     CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Motion for Remand. This case is **REMANDED** to the 298th District Court, Dallas County, Texas for further proceedings. All other pending motions are **TERMINATED** as moot.

**SO ORDERED.**

SIGNED June 30, 2021.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**